IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.

JULIE MICHELLE SHULER
  and
TAYLOR SKIEY BRADHAM
_____/

SEALED
INDICTMENT

4:25cr16-AW

THE GRAND JURY CHARGES:

COUNT ONE

A. INTRODUCTION

At all times material to this Indictment:

1.   The Stanley G. Tate Florida Prepaid College Program (also known as the Florida Prepaid College Plan) ("Florida Prepaid") sold to the public contracts comprised of one or more prepaid plans covering registration, local fees, tuition differential fees, and/or dormitory fees for future enrollment in a state postsecondary institution at a rate lower than the projected corresponding cost at the time of actual enrollment, pursuant to the provisions of Part IV, Chapter 1009, Florida Statutes.

2.   "Beneficiaries" were people for whose benefit Florida Prepaid contracts were executed. A beneficiary may have applied the benefits of a



contract toward any eligible educational institution as defined in Section 529 of the Internal Revenue Code.

3. An "account owner" was the person who is designated on the application for purchase of a Florida Prepaid contract as the account owner, unless the owner of the contract was subsequently changed, and who is the owner of record. An account owner was also known as a "purchaser."

4. The costs of participation in the plans were based primarily on the current and projected fees included in the plan within the Florida College System or the State University System, respectively, the number of credit hours or semesters included in the plan, and the number of years expected to elapse between the purchase of the plan on behalf of a qualified beneficiary and the exercise of the benefits provided in the plan by such beneficiary.

5. The Florida Prepaid College Trust Fund ("Trust Fund") held the assets of Florida Prepaid. The assets of Florida Prepaid were invested in accounts at The Northern Trust Company ("Northern Trust") until they were needed to be withdrawn. When Florida Prepaid assets were needed to be withdrawn, the funds were wired from Northern Trust to an account overseen by the State Board of Administration, and were ultimately transferred to Wells Fargo Bank, N.A. ("Wells Fargo") from which checks were drawn.

6. To offer its services, Florida Prepaid received the personal identifying information, include names, addresses, email addresses, phone numbers, social security numbers, and dates of birth, of its account owners and beneficiaries.

7. Each Florida Prepaid plan was assigned a unique plan number by Florida Prepaid.

8. The Florida Prepaid College Board ("FPCB") administered Florida Prepaid, and its headquarters was located in Tallahassee, Florida. The FPCB was administratively housed within the Florida State Board of Administration.

9. The FPCB contracted with Intuition College Savings Solutions ("ICSS") (which was acquired and merged into Government Brands, LLC ("Government Brands") in December 2021, and is now known as Catalis, LLC ("Catalis")). The company's college savings operations were headquartered in Jacksonville, Florida and it provided customer service and records administration service for Florida Prepaid. Part of the services that Government Brands provided included the collection and maintenance of personal identifying information ("PII"), and the processing of requests to change account owners and to terminate Florida Prepaid contracts.

10. Defendant **JULIE MICHELLE SHULER** was employed by Government Brands from March 22, 2022, through September 19, 2022.

3

11. Defendant **TAYLOR SKIEY BRADHAM** was employed by Government Brands from November 9, 2021, through September 19, 2022.

12. Florida Prepaid account owners could make account changes, such as updating their mailing address, email address, and phone number through a Customer Access Portal ("CAP"). The CAP was accessible through the Internet. Account owners could create a CAP profile and unique password. CAP profiles could be linked to existing Florida Prepaid plans using the account owner's PII.

13. Account owners could transfer ownership of a Florida Prepaid contract to another person. To change ownership of a Florida Prepaid contract, an account owner could make the request through the CAP.

14. Account owners could elect to terminate a Florida Prepaid contract at any time and for any reason. To cancel a Florida Prepaid contract, an account owner could make the request through the CAP. Refund proceeds would then be issued to account owners through checks drawn on Wells Fargo accounts, which were mailed to account owners by the United States Postal Service.

### B. THE CHARGE

Between on or about March 1, 2022, and on or about September 19, 2022, in the Northern District of Florida and elsewhere, the defendants,

**JULIE MICHELLE SHULER,**
and
**TAYLOR SKIEY BRADHAM,**

did knowingly and willfully combine, conspire, confederate, and agree together and with other persons to devise, and intend to devise, a scheme to defraud and for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme, to cause mail to be sent and delivered by the United States Postal Service and by a private and commercial interstate carrier, in violation of Title 18, United States Code, Section 1341.

## C. MANNER AND MEANS

The manner and means by which this conspiracy was committed included the following:

1. **JULIE MICHELLE SHULER** and **TAYLOR SKIEY BRADHAM** used their positions at Government Brands to access and view the PII of Florida Prepaid account owners and beneficiaries. On at least one occasion, **SHULER** falsely advised a Florida Prepaid beneficiary that their Florida Prepaid plan was previously cancelled by the account owner and that the plan proceeds had already been refunded.

2. **JULIE MICHELLE SHULER** and **TAYLOR SKIEY BRADHAM** created and caused to be created CAP profiles using the PII of Florida Prepaid owners and beneficiaries to fraudulently link existing Florida Prepaid contracts

and plans to the new profiles without the authorization of the account owners and beneficiaries.

3. **JULIE MICHELLE SHULER** and **TAYLOR SKIEY BRADHAM** called Government Brands by phone to fraudulently change mailing addresses, phone numbers, and email addresses associated with existing Florida Prepaid contracts and plans without the authorization of the account owners and beneficiaries.

4. **JULIE MICHELLE SHULER** and **TAYLOR SKIEY BRADHAM** fraudulently requested to change ownership of existing Florida Prepaid contracts and plans through the CAP using the PII of other individuals. In doing so, **SHULER** and **BRADHAM** fraudulently took over control of these Florida Prepaid accounts without the authorization of the account owners and beneficiaries.

5. **JULIE MICHELLE SHULER** and **TAYLOR SKIEY BRADHAM** fraudulently requested to terminate Florida Prepaid contracts through the CAP using the PII of Florida Prepaid account owners and beneficiaries, and other individuals without the authorization of the account owners and beneficiaries.

6. **JULIE MICHELLE SHULER** and **TAYLOR SKIEY BRADHAM** fraudulently caused Florida Prepaid refund checks to be mailed to addresses that they designated without the authorization of the account owners and beneficiaries.

/Once the checks were delivered, **SHULER** and **BRADHAM**, and others working at their direction, cashed the checks and deposited the checks into bank accounts, and attempted to do so.

7. Through all of the above-described conduct, **JULIE MICHELLE SHULER** and **TAYLOR SKIEY BRADHAM** fraudulently obtained and attempted to obtain approximately $86,000.00 in funds to which they were not entitled.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH FIVE

### A. INTRODUCTION

The allegations of Section A of Count One are hereby realleged and incorporated by reference as if fully set forth herein.

### B. THE CHARGE

Between on or about March 1, 2022, and on or about September 19, 2022, in the Northern District of Florida and elsewhere, the defendants,

**JULIE MICHELLE SHULER,**
and
**TAYLOR SKIEY BRADHAM,**

did knowingly and willfully devise, and intend to devise, a scheme to defraud and for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises, and for the purpose of executing such

7

scheme, did cause mail to be sent and delivered by the United States Postal Service.

### C. THE FRAUDULENT SCHEME

The allegations of Section C of Count One are hereby realleged and incorporated by reference as if fully set forth herein.

### D. MAILINGS

On or about the following dates, for the purpose of executing and attempting to execute the scheme to defraud, the defendants,

**JULIE MICHELLE SHULER,
and
TAYLOR SKIEY BRADHAM,**

knowingly did cause mail to be sent and delivered by the United States Postal Service as set forth below:

| COUNT | MAILING DATE | REGARDING FLORIDA PREPAID ACCOUNT OWNER(S) | MATTER MAILED | |
| --- | --- | --- | --- | --- |
| | | | CHECK NUMBER | IN THE AMOUNT OF |
| Two | Between on or about May 24, 2022, and on or about June 7, 2022 | L.C. and J.D. | 64389 | $41,904.07 |
| Three | Between on or about July 13, 2022, and on or about August 16, 2022 | E.M. and A.D. | 68242 | $26,747.60 |
| Four | Between on or about August 2, 2022, and on or about August 23, 2022 | J.H. and C.S. | 69484 | $18,185.29 |
| Five | Between on or about August 19, 2022, and on or about August 25, 2022 | E.M. and A.D. | 68242 | $26,747.60 |

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT SIX

Between on or about March 1, 2022, and on or about September 19, 2022, in the Northern District of Florida and elsewhere, the defendants,

**JULIE MICHELLE SHULER
and
TAYLOR SKIEY BRADHAM,**

did knowingly possess and use, without lawful authority, a means of identification of another person, to wit, the name, Florida Prepaid Plan Account number, date of birth, and social security number of L.C., J.D., J.H., C.S., E.M., and A.D., during and in relation to conspiracy to commit mail fraud, as charged in Count One of this Indictment.

9

In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## CRIMINAL FORFEITURE

The allegations contained in Counts One through Five of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture. From their engagement in the violations alleged in Counts One through Five of this Indictment, the defendants,

**JULIE MICHELLE SHULER,**
**and**
**TAYLOR SKIEY BRADHAM,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all of the defendants' right, title, and interest in any property, real and personal, constituting, and derived from, proceeds traceable to such offenses.

If any of the property described above as being subject to forfeiture, as a result of acts or omissions of the defendants:

    i.    cannot be located upon the exercise of due diligence;

    ii.    has been transferred, sold to, or deposited with a third party;

    iii.    has been placed beyond the jurisdiction of this Court;

    iv.    has been substantially diminished in value; or

    v.    has been commingled with other property that cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

A TRUE BILL:

*Redacted*

4/1/25
DATE

MICHELLE SPAVEN
Acting United States Attorney

JUSTIN M. KEEN
Assistant United States Attorney